# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PLUM MARKET FOOD SERVICE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| COMPASS GROUP USA, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Plum Market Food Service, LLC ("Plum"), by its attorneys, as and for its Complaint against Defendant Compass Group USA, Inc. ("Compass") alleges as follows:

## NATURE OF THE ACTION

1. This action arises out of Compass's wrongful termination of its license agreement with Plum and Compass's subsequent and continuing unauthorized use of Plum's unique and distinctive designs, decor, trade dress and other proprietary information in contravention of the parties' agreement and federal law.

## PARTIES

2. Plum is a Michigan limited liability company doing business in Cook County, Illinois. Plum is a growing specialty food company with 25 locations offering all natural, organic, locally sourced and sustainable foods at Plum Market and Plum Market Kitchens across the country. Plum is well-known for its service-forward approach to high quality food, beverage, wellness essentials and hand-crafted prepared foods. Plum has been recognized by Food & Wine Magazine as one of The 20 Best Regional Supermarkets of All Time.

3. Compass is a Delaware corporation doing business in Cook County, Illinois. Among other things, Compass is a food service company that operates various markets and restaurants throughout the country.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 (a), because Plum's claim under The Lanham Act, 15 U.S.C. §§ 1501 *et seq.,* raises a federal question involving infringement of trade dress.

5. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between Compass and Plum and between Compass and each of Plum's members.

6. This Court has personal jurisdiction over Compass because it conducts business in Illinois and because Plum's claims and injuries arise out of Compass's activities in Illinois.

7. Venue is proper in in this judicial district pursuant to 28 U.S.C. 1391(b)(2) because a substantial portion of the events giving rise to Plum's claims occurred in this judicial district.

## GENERAL ALLEGATIONS

### The Agreement

8. Compass is the food service provider for Northwestern University ("Northwestern"). In that role, Compass operates various dining options available on campus.

9. Plum features chef-crafted, prepared foods for breakfast, lunch and dinner, with an emphasis on all-natural, organic and locally sourced ingredients. This, among other reasons, is what makes Plum an attractive dining option for Northwestern's campus in Evanston, Illinois.

10. On or about August 29, 2018, Plum and Compass entered into a License Agreement (the "Agreement"), pursuant to which Compass sought to establish and operate a Plum Market Kitchen (the "Licensed Restaurant") at Northwestern. A copy of the Agreement is attached hereto as Exhibit 1.

11. After months of preparation, and significant expenditures by Plum, the Licensed Restaurant opened for business to the public as Lisa's Café featuring Plum Market Kitchen on or about October 1, 2018,

**Plum's Trade Dress**

12. When customers go to Plum, they expect to receive high quality food and service. Whether a customer walks into a full-service Plum Market, a condensed street store, or a Plum Market Kitchen, he/she will recognize Plum Market's signature look and feel.

13. The distinctive Plum design is intentionally minimal with industrial characteristics marked by concrete floors, ample use of warm wood tones, and clean stainless steel. The simple and sophisticated design unique to Plum Market inspires interaction with Plum's products through a thoughtful use of natural textures, measured lighting, and ambient flow.

14. Plum balances materials like raw cinderblock with delicate glass tiles, and cool marble and stone countertops with warm wooden soffits sourced from renewable bamboos and sturdy hardwoods.

15. Plum's meticulously designed interiors are fitted with carefully selected polished furnishings, European-style fixtures, and sleek industrial-style chairs complemented by natural, wood grain tables.

16. Plum's interiors are meticulously selected and designed to reflect the Plum culture and allow the integrity of Plum's products to shine.

17. The combination of the carefully selected materials, colors, and lighting makes Plum's look unique and recognizable.

18. To ensure that the Licensed Restaurant was consistent with the Plum Market brand and trade dress, the Agreement required that barring design elements and finishes required by the building's architecture or Northwestern, "any other design and construction standard must be approved by [Plum] and conform to [Plum's] trade dress requirements." (Ex. 1, Art. 3.1)

**Plum's Licensed Materials**

19. Compass opened and managed the day-to-day operation of the Licensed Restaurant.

20. Compass was required to ensure that the look and feel of the Licensed Restaurant and the experience of customers visiting the Licensed Restaurant were consistent with other Plum locations. It was critical for all operations of the Licensed Restaurant to comply with the specifications, standards, policies, procedures, and rules unique to the Plum brand.

21. Indeed, Compass had a duty to "use diligent, commercially reasonable efforts to reflect positively upon the 'Plum Market' and 'Plum Market Kitchen' brands and create a favorable public response to the Licensed Restaurant." (*Id.* at Art. 5.1).

22. To that end, and pursuant to the Agreement, Plum gave Compass access to its Licensed Materials, as that term is defined in the Agreement, which includes among other things, Plum's architectural designs, décor, furniture, furnishings, lists of required equipment, small wares, menu boards, vendor information, growers, recipes, and methods of operating.

23. Compass agreed in the License Agreement that its right to use Plum's Licensed Materials was derived solely from the Agreement and was "limited to its operation of the Licensed Restaurant pursuant to and in compliance with [the] Agreement," therefore "[a]ny unauthorized

use of the . . . Licensed Materials by [Compass] shall constitute a breach of [the] Agreement and an infringement of the rights of [Plum]." (*Id.* at Art. 1.2).

24. Compass further agreed that "as between It and [Plum], (a) [Plum] is the owner of all rights, title and interest in and to the . . . Licensed Materials, (b) [Plum] is the owner of the goodwill associated with the . . . Licensed Materials, including any goodwill created by [Compass's] acts pursuant to the terms of [the] Agreement, and (c) and goodwill created by the use of the Licensed Materials shall inure to the benefit of [Plum]." (*Id.* at Art. 8.2).

25. In the event the Agreement was terminated, Compass was required to "immediately cease all use of the … Licensed Materials, to return to [Plum] all materials containing Confidential Information, . . . to destroy any intellectual property of Plum's, . . . and to remove all signage and marketing materials and/or merchandizing material from the Licensed Restaurant." (*Id.* at Art. 11.2).

**Compass's Wrongful Termination of the Agreement**

26. The term of the Agreement ran simultaneously with the term of Compass's underlying food service agreement with Northwestern (the "Underlying Agreement"). (Ex. 1 at Art. 2). Plum was informed that the initial term of the Underlying Agreement is 10 years and that it could be extended beyond the initial term.

27. Compass was required to pay Plum a license fee in an amount equal to 5% of Gross Sales, as that term is defined in the Agreement, on a monthly basis for the term of the Agreement. (*Id.* at Art. 7.2).

28. Compass could terminate the Agreement without cause *only* if: (1) the Underlying Agreement between Compass and Northwestern expired or was terminated; or (2) "if requested by and pursuant to the directive of Northwestern." (Ex. 1, Art. 11.3).

5

29. Indeed, during negotiation of the Agreement, Compass proposed a termination "for convenience" provision that was explicitly rejected by Plum. The parties ultimately agreed that the Agreement could *not* be terminated for convenience and Plum relied on that when it invested significant time and money into the opening of the Licensed Restaurant.

30. By email dated May 15, 2020, Compass breached the Agreement by terminating it without cause (the "Termination Email").

31. There was no basis for termination for cause, and none of the requisite conditions that would warrant for cause termination had occurred.

32. Nor had the requirements for termination without cause been met. The termination was not requested by or pursuant to the directive of Northwestern, and the Underlying Agreement had neither expired nor been terminated.

33. In fact, as late as May 29, 2020 – two weeks *after* the Termination Email -- realizing that it had no valid contractual basis to terminate the Agreement, Compass attempted to manufacture a cause as an after the fact pretext for termination. Internal emails between Compass personnel reveal that Compass explicitly directed its employees to try to come up with a list of reasons for termination of the Agreement that Plum would be incapable of curing.

**Compass's Unauthorized Use of Plum's**
**Licensed Material and Trade Dress**

34. After its improper termination of the Agreement, Compass kicked Plum out of its location on Northwestern's campus and opened its own food market in the space, naming the new restaurant "Lisa's Café Market" –merging part of "Plum Market Kitchen" with "Lisa's Café" and creating the false impression that the current food market continues to be affiliated with Plum Compass' new concept continues to use Plum's trade dress and Licensed Material, including but

6

not limited to Plum's architectural designs, décor, furniture, furnishings, equipment, light fixtures, smallware, menu boards, and other proprietary information.

35. Compass is using Plum's Licensed Materials to attract clientele to the space formerly occupied by the Licensed Restaurant and is likely to cause confusion as to whether Lisa's Café Market is affiliated with Plum by using Plum's design, layout and aesthetic.

## COUNT I
### (Breach of Contract)

36. Plum realleges and incorporates by reference paragraphs 1 through 35 above as if restated in full herein.

37. Plum has performed, or has been excused from performing, any and all of its duties and obligations under the Agreement.

38. Any and all conditions precedent to Plum's rights under the Agreement have occurred or have otherwise been excused.

39. Compass breached the Agreement when it terminated the Agreement without cause and without meeting the conditions required to terminate without cause set forth in the Agreement. The Underlying Agreement was not terminated and had not expired, nor was the termination of the Agreement *pursuant to* Northwestern's request or directive.

40. Compass further breached the Agreement by its unauthorized and continued use of Plum's Licensed Material in its new Lisa's Café Market following termination of the Agreement, including but not limited to Plum's architectural designs, décor, furniture, furnishings, equipment, smallware, menu boards, and operational methods.

41. The foregoing conduct was a breach of Compass's contractual obligations and a breach of its implied duty of good faith and fair dealing owed to Plum.

42. Compass has deprived Plum of the benefit of its bargain and has acted in contravention of the letter and spirit of the Agreement.

43. Compass's breaches have caused Plum substantial damages in an amount no less than $75,000.

WHEREFORE, Plum prays that this Court enter judgment in its favor and against Compass: (A) awarding Plum actual, compensatory and consequential damages, including interest thereon, in an amount to be proven at trial; (B) ordering Compass to immediately cease using Plum's Licensed Materials; and (C) granting Plum such other and further relief the Court deems appropriate.

## COUNT II
### (Trade Dress Infringement)

44. Plum realleges and incorporates by reference paragraphs 1 through 43 above as if restated in full herein.

45. Plum's designs, layout and décor are inherently distinctive and unique to the Plum brand.

46. Over time, the overall appearance of Plum locations has become an identifying mark of the Plum brand.

47. Plum's designs, layout and décor are non-functional as they are not essential to the operation of a competing food market.

48. Compass's use of Plum's unique designs, layout, signage, and décor at the space formerly occupied by the Licensed Restaurant has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that (a) Compass's products are offered by Plum, (b) Compass's products and services are associated or connected

8

with Plum, or (c) Compass's products have the sponsorship, endorsement or approval of Plum, in violation of Section 43(a) of the Lanham Act.

49. Plum provides an upscale, on-trend venue for healthier choices, organic selections, and responsibly sourced products, all with convenience at taste.

50. Accordingly, Plum customers expect to receive a certain quality and type of products and services when they frequent a Plum location.

51. When Compass fails to provide that experience, customers will almost certainly attribute the below-grade service and food quality to Plum and would be discouraged from frequenting other Plum locations in the future, including the full-service Plum Market grocery store in Chicago which was recognized by Food & Wine Magazine as one of the 10 'Secret' Supermarkets You're Going to Love.

52. Compass's infringement of Plum's trade dress has tarnished and continues to tarnish Plum's reputation and damage or destroy the goodwill embodied in Plum's trade dress.

53. Compass's infringement is causing and will continue to cause dilution of the distinctive quality of Plum's trade dress.

54. Compass's unauthorized and continued use of Plum's trade dress has and will cause Plum irreparable harm.

WHEREFORE, Plum prays that this Court enter judgment in its favor and against Compass: (A) ordering Compass to immediately cease using Plum's trade dress; (B) awarding Plum actual, compensatory and consequential damages, including interest thereon, in an amount to be proven at trial; (B) awarding Plum the costs and reasonable attorneys' fees incurred by Plum in this action pursuant to 15 U.S.C. § 1117; and (C) granting Plum such other and further relief the Court deems appropriate.

## **COUNT III**
**(Unjust Enrichment)**
**(In The Alternative To Count I)**

55. Plum realleges and incorporates by reference paragraphs 1 through 35 and 45-54 above as if restated in full herein.

56. Through its unauthorized and continued use of Plum's Licensed Materials, Compass has enjoyed and continues to enjoy an unjust benefit at the expense and to the detriment of Plum.

57. Plum devoted significant time and money into the opening of the Licensed Restaurant with the reasonable expectation that the Licensed Restaurant would operate for years to come.

58. Compass is reaping the benefits of Plum's work as it continues to use Plum's designs, décor, fixtures, vendor lists, and other proprietary information to attract clientele to the space formerly occupied by the Licensed Restaurant.

59. Compass's retention of the foregoing benefits violates the fundamental principles of justice, equity and good conscience, which principles require that all such assets and proprietary information be turned over to Plum and/or destroyed.

60. Plum has no adequate remedy at law.

WHEREFORE, Plum prays that this Court enter judgment in its favor and against Compass: (A) awarding damages in the amount equal to any and all benefits Compass received from its unauthorized use of the Licensed Material; and (B) granting Plum such other and further relief the Court deems appropriate.

## **JURY DEMAND**

Plum hereby demands a trial by jury as to all issues so triable.

>Respectfully submitted,
>PLUM MARKET FOOD SERVICE, LLC
>
>By:    /s/ *Donald A. Tarkington*
>        One Of Its Attorneys

Donald A. Tarkington
*dtarkington@novackmacey.com*
Yvette V. Mishev
*ymishev@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Firm No. 91731

11